## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
## INDIANAPOLIS DIVISION

| | |
|---|---|
| Shirley Duren,<br><br>       Plaintiff,<br><br>v.<br><br>Experian Information Solutions, Inc., Equifax Information Services LLC, and Trans Union LLC,<br><br>       Defendants. | Civil Action No: 1:23-cv-00197<br><br><br>**COMPLAINT AND DEMAND FOR JURY TRIAL** |

## COMPLAINT SEEKING DAMAGES FOR VIOLATIONS OF THE FAIR CREDIT REPORTING ACT

### INTRODUCTION

1. The United States Congress has found the banking system is dependent upon fair and accurate credit reporting.

2. Inaccurate credit reports directly impair the efficiency of the banking system, and unfair credit reporting methods undermine the public confidence, which is essential to the continued functioning of the banking system.

3. Congress enacted the Fair Credit Reporting Act, 15 U.S.C. § 1681 *et seq*. ("FCRA"), to ensure fair and accurate reporting, promote efficiency in the banking system, and protect consumer privacy.

4. The FCRA seeks to ensure consumer reporting agencies exercise their grave responsibilities with fairness, impartiality, and a respect for the consumer's right to privacy because consumer reporting agencies have assumed such a vital role in assembling and evaluating consumer credit and other information on consumers.

5.      The FCRA also imposes duties on the sources that provide credit information to credit reporting agencies, called "furnishers."

6.      The FCRA protects consumers through a tightly wound set of procedural protections from the material risk of harms that otherwise flow from inaccurate reporting.

7.      Thus, through the FCRA, Congress struck a balance between the credit industry's desire to base credit decisions on accurate information, and consumers' substantive right to protection from damage to reputation, shame, mortification, and the emotional distress that naturally follows from inaccurate reporting of a consumer's fidelity to his or her financial obligations.

8.      Shirley Duren ("Plaintiff"), by Plaintiff's attorneys, brings this action to challenge the actions of Defendants Experian Information Solutions, Inc. ("Experian"), Equifax Information Services LLC ("Equifax") and Trans Union LLC ("TU") (jointly as "Defendants"), regarding erroneous reports of derogatory credit information and Defendants' failure to maintain maximum possible accuracy as to Plaintiff's credit reports.

9.      While many violations are described below with specificity, this Complaint alleges violations of the statute cited in its entirety.

10.     Unless otherwise stated, all the conduct engaged in by Defendants took place in Indiana.

11.     Defendants committed each of these violations knowingly, willfully, and intentionally, and Defendants did not maintain procedures reasonably adapted to avoid any such violation.

12.     Through this Complaint, Plaintiff does not allege that any state court judgment was entered against anyone in error, and Plaintiff does not seek to reverse or modify any judgment of any state court.

## JURISDICTION AND VENUE

13. Jurisdiction of this Court arises under 28 U.S.C. § 1311 and pursuant to 15 U.S.C. § 1681 *et seq*.

14. Venue is proper in this District pursuant to 28 U.S.C. § 1391(b), in that Defendants transact business in this District and a substantial portion of the acts giving rise to this action occurred in this District.

15. Plaintiff resides in this District.

## PARTIES

16. Plaintiff is an adult individual and is a "consumer" as that term is defined by 15 U.S.C. § 1681a(c).

17. Defendant Experian is a business entity doing business in the Southern District of Indiana.

18. Defendant Experian's registered agent address is: C T Corporation System, 334 North Senate Avenue, Indianapolis, IN 46204.

19. Defendant Experian regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and use interstate commerce to prepare and/or furnish the reports.

20. Defendant Experian is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

21. Defendant Equifax is a business entity doing business in the Southern District of Indiana.

22. Defendant Equifax's registered agent address is: Corporation Service Company, 135 North Pennsylvania Street, Suite 1610, Indianapolis, IN, 46204.

23.    Defendant Equifax regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and use interstate commerce to prepare and/or furnish the reports.

24.    Defendant Equifax is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

25.    Defendant TU is a business entity doing business in the Southern District of Indiana.

26.    Defendant TU's registered agent address is: The Prentice-Hall Corporation System Inc., 135 North Pennsylvania Street, Suite 1610, Indianapolis, IN, 46204.

27.    Defendant TU regularly assembles and/or evaluates consumer credit information for the purpose of furnishing consumer reports to third parties and use interstate commerce to prepare and/or furnish the reports.

28.    Defendant TU is a "consumer reporting agency" as that term is defined by 15 U.S.C. § 1681a(f).

29.    Unless otherwise indicated, the use of Defendants' names in this Complaint includes all agents, employees, officers, members, directors, heirs, successors, assigns, principals, trustees, sureties, subrogees, representatives, and insurers of the named Defendant.

30.    Plaintiff is informed and believe and thereon alleges that all acts of corporate employees as hereinafter alleged were authorized or ratified by an officer, director or managing agent of the corporate employer.

31.    Plaintiff is informed and believe and, on that basis, alleges that at all times mentioned herein each Defendant was the principal, agent or employee and in acting as such principal or within the course and scope of such employment or agency, took some part in the acts

and omissions hereinafter set forth by reason of which each respective Defendant is liable to Plaintiff for the relief prayed for herein.

## FACTUAL ALLEGATIONS

32.    Sometime on or before September 2013, Plaintiff purchased a car that was financed with an auto loan (the "Account").

33.    The Account was serviced by JP Morgan Chase Bank, N.A ("Chase").

34.    On or about March 18, 2019, Plaintiff filed for Chapter 13 Bankruptcy in the United States Bankruptcy Court for the Southern District of Indiana. Plaintiff's case was assigned Case Number 19-1636-RLM-13 (the "Bankruptcy").

35.    On or about June 10, 2019, Plaintiff's Chapter 13 Plan was confirmed.

36.    The Account was listed in Plaintiff's Chapter 13 Plan as one to be paid through the Trustee conduit.

37.    The confirmed Chapter 13 Plan provided a nonstandard provision that stated:

> For all creditors receiving payments through the Trustee conduit (Trustee Pay), the following plan provision shall apply: This Chapter 13 Plan along with the Confirmation Order is a modification of the original contracted payment terms with the Debtor(s) as set forth herein and allowed under bankruptcy law. The payment due days, application of payments, assessment of late fees and attorney fees, and balances owed are hereby controlled by the terms described in this Chapter 13 Plan. See (*In re Diana Lynn Harvey*, 213 F.3d 318 7th Cir. 2000). This modified contract, created by the confirmed Chapter 13 Plan and Confirmation Order, shall only be subject to modification of the Chapter 13 Plan under 11 U.S.C. § 1329. This section is not applicable to direct pay secured creditors not paid through the Trustee conduit.

38.    Chase received notice of the confirmed Chapter 13 Plan.

39.    The nonstandard provision in the confirmed Chapter 13 Plan creates an obligation for creditors who choose to credit report to do so in conformity with the modified contract created by the Chapter 13 Plan.

40.    This means that creditors who credit report must report the balance of the account within the Bankruptcy, along with the recent payment, payments made, and the current status of those payments.

41.    Despite the Chapter 13 Plan, Account was reported by Defendants without a balance or payment information on Plaintiff's Experian, TU, and Equifax credit reports.

42.    Plaintiff's creditors and potential creditors have accessed Plaintiff's credit reports while the misreporting described herein was on Plaintiff's credit reports and were misinformed by Defendants about Plaintiff's credit worthiness.

### *Experian's Inaccurate Reporting of the Account*

43.    On or before September 7, 2022, Experian was reporting numerous incorrect, incomplete, and/or materially misleading remarks regarding the Account.

44.    Upon information and belief, the Account was reported on Experian reports with no balance, no amount paid, no payment history, and account information stating it was "Debt included in or discharged through Bankruptcy Chapter 13."

45.    By reporting the above-described inaccurate and/or materially misleading information on the Account, Experian was incorrectly making it appear as if the Account had been closed and that it had been, or would be, discharged through the Bankruptcy.

46.    It is inaccurate, incomplete, and/or materially misleading for Experian to report any derogatory collection information which is inconsistent with the Orders entered by the Bankruptcy Court.

47.    However, Experian either reported or caused to be reported inaccurate information as discussed herein.

### *Equifax's Inaccurate Reporting of the Account*

48.    On or before September 7, 2022, Equifax was reporting numerous incorrect and/or

materially misleading remarks regarding the Account.

49.    Upon information and belief, the Account was reported on the Equifax report with no balance, no amount paid, no payment history, and Chapter 13 Bankruptcy remarks.

50.    By reporting the above-described inaccurate, incomplete, and/or materially misleading information on the Account, Equifax were incorrectly making it appear as if the Account had been closed and that it had been, or would be, discharged through the Bankruptcy.

51.    It is inaccurate, incomplete, and/or materially misleading for Equifax to report any derogatory collection information which is inconsistent with the Orders entered by the Bankruptcy Court.

52.    However, Equifax either reported or caused to be reported inaccurate information as discussed herein.

### *TU's Inaccurate Reporting of the Account*

53.    On or before September 7, 2022, TU was reporting numerous incorrect and/or materially misleading remarks regarding the Account.

54.    Upon information and belief, the Account was reported on the TU report with no balance, no amount paid, no payment history, and Chapter 13 Bankruptcy remarks.

55.    By reporting the above-described inaccurate and/or materially misleading information on the Account, TU was incorrectly making it appear as if the Account had been closed and that it had been, or would be, discharged through the Bankruptcy.

56.    It is inaccurate, incomplete, and/or materially misleading for TU to report any derogatory collection information which is inconsistent with the Orders entered by the Bankruptcy Court.

57.    However, TU either reported or caused to be reported inaccurate information as discussed herein.

***Plaintiff's Dispute of Experian's Reporting of the Account***

58.    On or after September 7, 2022, Plaintiff disputed Experian's reporting of the Account on Plaintiff's Experian credit report pursuant to 15 U.S.C. § 1681i by notifying Experian, in writing, of the incorrect and inaccurate credit information.

59.    Plaintiff sent a letter to Experian requesting the above inaccurate, incomplete, and/or materially misleading and derogatory information be updated, modified, or corrected as to the Account (the "Experian Dispute").

60.    Specifically, Plaintiff explained in the Experian Dispute that the Account was paid through the Chapter 13 Trustee.

61.    Plaintiff requested that Experian report the current balance and the ongoing payments Plaintiff was making on the Account.

62.    Plaintiff attached supporting documents to the Experian Dispute, including the Chapter 13 Plan and Confirmation Order.

63.    Experian received Plaintiff's Experian Dispute.

64.    Upon receipt of the Experian Dispute, Experian was required to conduct a reinvestigation into the Account on Plaintiff's consumer reports pursuant to 15 U.S.C. § 1681i.

65.    Pursuant to 15 U.S.C. § 1681i, Experian had a duty to notify Chase of Plaintiff's Experian Dispute within five business days of receiving the dispute, to forward the supporting documents submitted with Plaintiff's Experian Dispute for Chase to review, to conduct a reasonable reinvestigation of the disputed information, and to correct the tradeline or delete it from Plaintiff's consumer files.

66.    A reasonable investigation by Experian would have indicated that they were reporting the Account in an inaccurate, incomplete, and/or materially misleading way.

67.    However, after receipt of the Experian Dispute, Experian continued to report the

inaccurate, incomplete, and/or materially misleading information on Plaintiff's Experian credit report.

### *Plaintiff's Dispute of Equifax's Reporting of the Account*

68. On or after September 7, 2022, Plaintiff Equifax's reporting of the Account on Plaintiff's Equifax credit report pursuant to 15 U.S.C. § 1681i by notifying Equifax, in writing, of the incorrect and inaccurate credit information.

69. Plaintiff sent a letter to Equifax requesting the above inaccurate, incomplete, and/or materially misleading and derogatory information be updated, modified, or corrected as to the Account (the "Equifax Dispute").

70. Specifically, Plaintiff explained in the Equifax Dispute that the Account was paid through the Chapter 13 Trustee.

71. Plaintiff requested that Equifax report the current balance and the ongoing payments Plaintiff was making on the Account.

72. Plaintiff attached supporting documents to the Equifax Dispute, including the Chapter 13 Plan and Confirmation Order.

73. Equifax received Plaintiff's Equifax Dispute.

74. Upon receipt of the Equifax Dispute, Equifax was required to conduct a reinvestigation into the Account on Plaintiff's consumer report pursuant to 15 U.S.C. § 1681i.

75. Pursuant to 15 U.S.C. § 1681i, Equifax had a duty to notify Chase of Plaintiff's Equifax Dispute within five business days of receiving the dispute, to forward the supporting documents submitted with Plaintiff's Equifax Dispute for Chase to review, to conduct a reasonable reinvestigation of the disputed information, and to correct the tradeline or delete it from Plaintiff's consumer files.

76. A reasonable investigation by Equifax would have indicated that they were reporting the

Account in an inaccurate, incomplete, and/or materially misleading way.

77. However, after receipt of the Equifax Dispute, Equifax continued to report the inaccurate, incomplete, and/or materially misleading information on Plaintiff's Equifax credit report.

### *Plaintiff's Dispute of TU's Reporting of the Account*

78. On or after September 7, 2022, Plaintiff disputed TU's reporting of the Account on Plaintiff's TU credit report pursuant to 15 U.S.C. § 1681i by notifying TU, in writing, of the incorrect and inaccurate credit information.

79. Plaintiff sent a letter to TU requesting the above inaccurate, incomplete, and/or materially misleading and derogatory information be updated, modified, or corrected as to the Account (the "TU Dispute").

80. Specifically, Plaintiff explained in the TU Dispute that the Account was paid through the Chapter 13 Trustee.

81. Plaintiff requested that TU report the current balance and the ongoing payments Plaintiff was making on the Account.

82. Plaintiff attached supporting documents to the TU Dispute, including the Chapter 13 Plan and Confirmation Order.

83. TU received Plaintiff's TU Dispute.

84. Upon receipt of the TU Dispute, TU was required to conduct a reinvestigation into the Account on Plaintiff's consumer reports pursuant to 15 U.S.C. § 1681i.

85. Pursuant to 15 U.S.C. § 1681i, TU had a duty to notify Chase of Plaintiff's TU Dispute within five business days of receiving the dispute, to forward the supporting documents submitted with Plaintiff's TU Dispute for Chase to review, to conduct a reasonable reinvestigation of the disputed information, and to correct the tradelines or delete them from Plaintiff's consumer files.

86.    A reasonable investigation by TU would have indicated that they were reporting the Account in an inaccurate, incomplete, and/or materially misleading way.

87.    However, after receipt of the TU Dispute, TU continued to report the inaccurate, incomplete, and/or materially misleading information on Plaintiff's TU credit report.

### *Experian's Continued Inaccurate Reporting after the Experian Dispute*

88.    Following Experian's investigation into the Experian Dispute, Experian issued dispute results to Plaintiff dated September 16, 2022 (the "Experian Dispute Results").

89.    Experian failed to remove or correct the inaccurate, incomplete, and/or materially misleading reported information contained in the Account on the Experian Dispute Results.

90.    Instead, on the Experian Dispute Results, Experian continued to report the Account in an inaccurate, incomplete, and/or materially misleading way.

91.    Experian continued to report the Account on the Experian Dispute Results with: no balance or monthly payment amount, no payment history, a status of "Petition for Chapter 13 Bankruptcy".

92.    Experian's reporting extended beyond the Experian Dispute Results, as Experian continued to report the Account inaccurately on a January 19, 2023 Experian credit report with no balance, no recent payment amount, no monthly payment, and no payment history, along with Petition for Chapter 13 Bankruptcy notations.

93.    Experian's reporting was inaccurate, incomplete, and/or materially misleading because the result of their reporting was to make it appear as if the Account was negative, had been or would be discharged through Plaintiff's Bankruptcy, that no balance or monthly payment was owed, and that Plaintiff had not made any payments since the Bankruptcy was filed.

94.    Experian's continued inaccurate, incomplete, and/or materially misleading reporting, failures to investigate or correct the inaccurately reported information on the Account were

problematic because Plaintiff's dispute included relevant supporting documents, which Experian chose to ignore.

### *Equifax's Continued Inaccurate Reporting after the Equifax Dispute*

95.    Following Equifax's investigation into the Equifax Dispute, Equifax issued dispute results to Plaintiff dated November 18, 2022 (the "Equifax Dispute Results").

96.    Equifax failed to remove or correct the inaccurate, incomplete, and/or materially misleading reported information contained in the Account on the Equifax Dispute Results.

97.    Instead, on the Equifax Dispute Results, Equifax continued to report the Account in an inaccurate, incomplete, and/or materially misleading way.

98.    Specifically, Equifax reported the Account with: no balance or monthly payment amount, no payment history, additional information of "Chapter 13 Bankruptcy" and "Bankruptcy Petition".

99.    Equifax's reporting extended beyond the Equifax Dispute Results, as Equifax continued to report the Account inaccurately on a January 19, 2023 Equifax credit report with no balance, no recent payment amount, no monthly payment, and no payment history.

100.    The Equifax credit report also reported the Account as "closed" and "Included in Chapter 13".

101.    Equifax's reporting was inaccurate, incomplete, and/or materially misleading because the result of their reporting was to make it appear as if the Account was closed, negative, had been or would be discharged through Plaintiff's Bankruptcy, without a balance or monthly payment was owed, and that Plaintiff had not made any payments since the Bankruptcy was filed.

102.    Equifax's continued inaccurate, incomplete, and/or materially misleading reporting, failures to investigate or correct the inaccurately reported information on the Account were

problematic because Plaintiff's dispute included relevant supporting documents, which Equifax chose to ignore.

### *TU's Continued Inaccurate Reporting after the TU Dispute*

103. Following TU's investigation into the TU Dispute, TU issued dispute results to Plaintiff dated September 21, 2022 (the "TU Investigation Results").

104. TU failed to remove or correct the inaccurate, incomplete, and/or materially misleading reported information contained in the Account on the TU Investigation Results.

105. Instead, on the TU Investigation Results, TU continued to report the Account in an inaccurate, incomplete, and/or materially misleading way.

106. TU continued to report the Account on the TU Investigation Results with: no balance or monthly payment amount, no payment history, a status of "Account Included in Bankruptcy".

107. TU's reporting extended beyond the TU Investigation Results, as TU continued to report the Account inaccurately on a January 19, 2023 TU credit report with no balance, no recent payment amount, no payment history, and a pay status of "Account Included in Bankruptcy".

108. TU's reporting was inaccurate, incomplete, and/or materially misleading because the result of their reporting was to make it appear as if the Account was negative, had been or would be discharged through Plaintiff's Bankruptcy, that no balance or monthly payment was owed, and that Plaintiff had not made any payments since the Bankruptcy was filed.

109. TU's continued inaccurate, incomplete, and/or materially misleading reporting, failures to investigate or correct the inaccurately reported information on the Account were problematic because Plaintiff's dispute included relevant supporting documents, which TU chose to ignore.

### *The Impact of Inaccurate or Misleading Information on Consumer Reports*

110. A "Consumer Report", as defined by 15 U.S.C. § 1681a(d)(1), impacts a consumer's eligibility for:

    iii.    credit or insurance to be used primarily for personal, family, or household purposes;

    ii.    employment purposes; or

    iii.    any other purpose authorized under section 1681b.

111. As a result, the information held within a consumer report impacts not only a consumer's credit worthiness, rating, and capacity, but also the character, general reputation, and personal characteristics of the consumer.

112. A Federal Trade Commission study mandated by Congress on credit report accuracy ("FTC Study") found that one in five consumers had an error on at least one of their three major credit reports (Equifax, Experian, and Trans Union), with some consumers experiencing inaccuracies that can depress credit scores by over 100 points. *See* https://www.ftc.gov/news-events/press-releases/2013/02/ftc-study-five-percent-consumers-had-errors-their-credit-reports.

113. The FTC Study found that the types of errors oumer reports could lead to consumers paying more for products such as auto loans and insurance. *See* https://www.ftc.gov/news-events/press-releases/2013/02/ftc-study-five-percent-consumers-had-errors-their-credit-reports.

### *Credit Scoring*

114. The Fair Isaac Corporation credit risk scoring system, also known as "FICO", is a ubiquitous credit scoring system and utilizes data reported by credit reporting agencies. *See* https://www.myfico.com/credit-education/credit-scores/ .

115.   Defendants' inaccurate and/or materially misleading reporting has caused Plaintiff to suffer from reduced FICO credit scores.

116.   The Fair Isaac Corporation uses the data in consumer reports to calculate credit scores that it assigns to consumers.

117.   The term "credit score" is a numerical value or a categorization used to predict the likelihood of certain credit behaviors, including default. *See* http://files.consumerfinance.gov/f/201210_cfpb_supervision-and-examination-manual-v2.pdf.

118.   FICO scores are calculated from credit data in a consumer's credit report that are arranged in five main categories. Those categories are identified and weighted as follows: payment history accounts for 35% of a consumer's FICO score; debt/amounts owed accounts for 30% of a consumer's FICO score; age/length of credit history accounts for 15% of a consumer's FICO score; new credit/recent inquiries accounts for 10% of a consumer's FICO score; and mix of accounts/types of credit accounts for 10% of a consumer's FICO score. *See* https://www.myfico.com/credit-education/whats-in-your-credit-score/.

119.   A consumer's credit score impacts that consumer's cost of credit (e.g., interest rates, fees, etc.), availability of credit, ratings for insurance products, and even unsolicited credit offers, such as the opportunity to refinance a mortgage at a lower interest rate, extend financing periods, lower rate auto loans, and even zero-percent financing credit offers for in-store credit lines.

120.   Inaccurate, incomplete, and/or incorrect credit reporting often results in a lower FICO (and other credit scoring model) scores, thus creating higher costs of credit for the consumer, diminished opportunities, and less purchasing power.

121.   Here, the inaccurate, incomplete, and/or materially misleading reporting of the Account adversely affects Plaintiff's FICO score as Plaintiff's credit reports make it appear as though Plaintiff had not been paying on the Account at all and that the Account would be discharged in the Bankruptcy (or already was discharged).

122.   There is no established rule or threshold for classifying the significance of a credit score change as minor or major because the impact of a change in score is dependent on the current score; *i.e.*, a one-point change in credit score that moves the consumer from one risk tier to the next may have a large impact on the consumer's ability to receive credit, the type of credit, or rates of that credit that a consumer may receive.

123.   Consistent with the FTC Study, the Fair Isaac Corporation states that inaccurate or incorrect information on a consumer's credit report can hurt their score. *See* https://www.myfico.com/credit-education/questions/fix-errors-on-credit-report/.

### *Defendants' Violations of the FCRA and Plaintiff's Damages*

124.   It is inaccurate, incomplete, and/or materially misleading to report an account does not have a balance when it does in fact have a balance.

125.   It is inaccurate, incomplete, and/or materially misleading to report an account does not have any payments made upon it when the consumer is in fact making payments on the account.

126.   It is inaccurate, incomplete, and/or materially misleading to suppress positive and accurate account balance and payment data.

127.   It is inaccurate, incomplete, and/or materially misleading to give the impression that an account is closed when it is open and a consumer is paying on it as agreed.

128. As evidenced by Experian's failure to report accurate information on the Account on the Experian Dispute Results and subsequent reporting—despite having notice of relevant bankruptcy documents—Experian failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates as required by and in violation of 15 U.S.C. § 1681e(b).

129. Experian either ignored or failed to review all relevant information on the Account and thus failed to ensure maximum possible accuracy of the information concerning the individuals about whom the reports relate.

130. As evidenced by Equifax's failure to report accurate information on the Account on the Equifax Dispute Results and subsequent reporting—despite having notice of relevant bankruptcy documents—Equifax failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates as required by and in violation of 15 U.S.C. § 1681e(b).

131. Equifax either ignored or failed to review all relevant information on the Account and thus failed to ensure maximum possible accuracy of the information concerning the individual about whom the report relates.

132. As evidenced by TU's failure to report accurate information on the Account on the TU Investigation Results and subsequent reporting—despite having notice of relevant bankruptcy documents—TU failed to follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates as required by and in violation of 15 U.S.C. § 1681e(b).

133.  TU either ignored or failed to review all relevant information on the Account and thus failed to ensure maximum possible accuracy of the information concerning the individual about whom the report relates.

134.  Additionally, as evidenced by the inaccurate, incomplete, and/or materially misleading re-reporting after Plaintiff sent Defendants written disputes identifying the inaccurate, incomplete, and/or materially misleading information related to the Account, Defendants, upon receipt of Plaintiff's disputes, failed to conduct a reasonable reinvestigation with respect to the disputed information as required by 15 U.S.C. § 1681i.

135.  Defendants failed to review all relevant information provided by Plaintiff in the disputes to Defendants, as required by and in violation of 15 U.S.C. § 1681i.

136.  Due to Defendants' failure to reasonably investigate, Defendants further failed to correct and update Plaintiff's information as required by 15 U.S.C. § 1681i, thereby causing continued reporting of inaccurate, incomplete, and/or materially misleading information in violation of 15 U.S.C. § 1681i.

137.  By reporting inaccurate, incomplete, and/or materially misleading account information after notice and confirmation of their errors, Defendants failed to take the appropriate measures as required under 15 U.S.C. § 1681i.

138.  Defendants' inaccurate, incomplete, and/or materially misleading reporting on the Account—in light of their knowledge of the positive data they could report on the Account—was willful. Plaintiff is, accordingly, eligible for statutory damages.

139.  Reckless disregard of a requirement of the FCRA qualifies as a willful violation of the FCRA within the meaning of § 1681n(a). *See Safeco Ins. Co. of Am. V. Burr*, 551 U.S. 47, 71 (2007).

140. Based upon Defendants' knowledge of the Account and the data they possessed on the Account, even if Defendants could claim they did not willfully violate the FCRA, their conduct was at the very least done with reckless disregard of their obligations under the FCRA.

141. Defendants' inaccurate, incomplete, and/or materially misleading reporting has caused Plaintiff to suffer actual damages, including, without limitation: fear of credit denials, damage to Plaintiff's creditworthiness, damage to Plaintiff's credit reputation, humiliation, frustration, and emotional distress.

142. Plaintiff entered bankruptcy to clean up and build Plaintiff's credit and to pay and resolve debts, and Defendants' inaccurate reporting continues to upset her as Plaintiff has made a point of making all payments called for in her Chapter 13 Plan since 2019, yet Plaintiff has received no benefit from the history of Plaintiff's payments

143. As a result of Defendants' inaccurate reporting, Plaintiff has suffered ongoing headaches and sleeplessness as Plaintiff lies awake wondering whether the reporting will ever be corrected, whether Plaintiff will ever be able to leave her rented apartment, and why Defendants aren't playing by the rules.

144. Plaintiff's goal is to improve her credit and one day obtain a mortgage to purchase a home of her own and leave the rented apartment Plaintiff currently resides in.

145. As a result of Defendants' inaccurate reporting, Plaintiff has ongoing anger and frustration that Defendants created the problem and despite having been given many opportunities to correct the reporting have failed to do so, leaving Plaintiff to feel like Plaintiff does not matter.

146. Plaintiff was denied a credit card from Capital One in the late Fall of 2022.

147.    Plaintiff is in remission from a past cancer diagnosis and Defendants' inaccurate reporting and Defendants' failure to correct the inaccurate reporting have caused Plaintiff ongoing stress that she cannot avoid.

148.    Defendants' inaccurate reporting has caused stress that Plaintiff believes has aggravated Plaintiff's high blood pressure and acid reflux.

149.    Defendants' inaccurate reporting has caused Plaintiff to feel humiliated and discredited as the reporting makes it appear to people reviewing her credit reports that Plaintiff is not making her payments on the Account.

150.    Defendants' inaccurate reporting has caused Plaintiff to incur out of pocket payments and waste time in Plaintiff's efforts to get Defendants to report accurately on the Account.

151.    As a result, by reporting inaccurate, incomplete, and/or materially misleading account information, Defendants' acts and omissions have caused in the illegitimate suppression of Plaintiff's FICO credit score and other credit rating model scores.

152.    The adverse effect on Plaintiff's credit score places Plaintiff at the material risk of being denied credit or receiving less favorable credit terms than Plaintiff otherwise would.

153.    Upon information and belief, Plaintiff's credit reports were published to third parties while the inaccurate information on the Account was reporting.

154.    Defendants thus caused a defamation-type harm upon Plaintiff.

155.    Creating the false impression that the Account was negative instead of positive creates a material risk that Plaintiff would be denied credit, receive less favorable credit treatment than Plaintiff otherwise would, or receive other unfavorable treatment than Plaintiff otherwise would, from any viewer of Plaintiff's credit reports that is engaged in judgment-based lending.

## FIRST CAUSE OF ACTION
### FCRA - 15 U.S.C. § 1681 *et seq.*

156.    Plaintiff repeats, re-alleges, and incorporates by reference all above paragraphs.

157.    The foregoing acts and omissions constitute numerous and multiple violations of the FCRA, including, but not limited to 15 U.S.C. § 1681e(b) as to Experian, Equifax, and TU.

158.    Defendants Experian, Equifax, and TU's acts and omissions were in violation of 15 U.S.C. § 1681i as well.

159.    The above-described violations by Defendants were willful, allowing Plaintiff to recover under 15 U.S.C. § 1681n.

160.    As a result of each and every willful violation of the FCRA, Plaintiff is entitled to actual damages or statutory damages of not less than $100.00 and not more than $1,000.00, pursuant to 15 U.S.C. § 1681n(a)(1)(A); punitive damages as the court may allow, pursuant to 15 U.S.C. § 1681n(a)(2); and costs together with reasonable attorneys' fees pursuant to 15 U.S.C. § 1681n(a)(3) from Defendants.

161.    In the alternative, Defendants were negligent in their actions, which entitled Plaintiff to recover und 15 U.S.C. § 1681o.

162.    As a result of each and every negligent violation of the FCRA, Plaintiff is entitled to actual damages, pursuant to 15 U.S.C. § 1681o(a)(1); and costs together with reasonable attorneys' fees pursuant to 15 U.S.C. § 1681o(a)(2), from Defendants.

## REQUEST FOR A JURY TRIAL

163.    Plaintiff is entitled to, and demands, a trial by jury.

## PRAYER FOR RELIEF

Wherefore, Plaintiff respectfully requests the Court grant Plaintiff the following relief against Defendants:

1.     A declaratory judgment that Defendants' actions as discussed herein are unlawful;

2.     Plaintiff's actual damages from each Defendant;

3.     Statutory damages of not less than $100.00 and not more than $1,000.00 to Plaintiff, pursuant to 15 U.S.C. § 1681n(a)(1), from each Defendant;

4.     Punitive damages from each Defendant, pursuant to 15 U.S.C. §1681n(a)(2);

5.     An award of costs of litigation and reasonable attorneys' fees from each Defendant, pursuant to 15 U.S.C. § 1681o(a)(2) or 15 U.S.C. § 1681n(a)(3); and

6.     Any other relief the Court may deem just and proper.

Dated: February 1, 2023

Respectfully Submitted,


By: _/s/Richard J. Shea_____

Richard J. Shea, Esq., # 21396-53
Sawin & Shea, LLC.
*Attorneys for Plaintiff*
6100 N. Keystone Avenue, Suite 620
Indianapolis, IN 46220
Telephone: (317) 255-2600
Facsimile: (317) 255-2905
E-mail: rshea@sawinlaw.com